## HUK–A–POO SPORTSWEAR, INC., Plaintiff,

v.

## FRANSHAW, INC., Defendant.

### No. 75 Civ. 496 F.

United States District Court, S. D. New York.

Jan. 23, 1976.

Gottlieb, Rackman, Reisman & Kirsch, New York City, for plaintiff; George Gottlieb, New York City, of counsel.

Ezon, Langberg & Granoff, Steven A. Ezon, New York City, Lerner, David, Littenberg & Samuel, Lawrence I. Lerner, Westfield, N. J., Ezra Sutton, New York City, of counsel, for defendant.

KEVIN THOMAS DUFFY, District Judge.

This is a motion for a preliminary injunction in a fabric design copyright case. There is no doubt that the defendant has "knocked off" certain designs owned by the plaintiff and have used these designs on textiles and have made shirts out of these fabrics which are sold in competition with the plaintiff's goods.

The defendant has already consented to preliminary injunctions as to six different designs but has raised as a defense an alleged invalidity of the copyrights in question and specifically attacked the validity of Certificate of Registration No. H 59335 in view of Section 16 of the Copyright Act of 1909 (17 U.S.C. § 16) sometimes referred to as the "manufacturing clause."

The facts are fairly straightforward. The plaintiff, Huk-A-Poo Sportswear, Inc. (hereinafter "Huk-A-Poo") produces original designs "in-house" or from outside designers, with a view to transferring them to textiles. Thereafter, the designs are submitted for registration and the originals are sent out of the country, generally to the Far East, for manufacture. The manufacturing process is as follows:

"There, a number of stencils (or color separations) are made from the original art work. Each stencil represents one color area of the original art work. Each stencil is placed against a mesh screen, which has previously been coated with a light sensitive material. Light via a light box is then directed against this screen so as to react with the coating material. The stencil blocks the light from contacting certain areas of the coating material. The screen is then washed, thereby removing the coating material which was blocked by the stencil, so that dye may later pass through those areas. The screen may be of the flat or rotary type. A number of such screens are placed into a commercial screen printing machine, and the screens contact a moving fabric, to imprint this fabric." (Plaintiff's Answers to Defendant's First Set of Interrogatories, p. 4)

Section 16 of the Copyright Law provides:

"§ 16. Mechanical work to be done in United States

"Of the printed book or periodical specified in section 5, subsections (a) and (b), of this title, except the original text of a book or periodical of foreign origin in a language or languages other than English, the text of all copies accorded protection under this title, except as below provided, shall be printed from type set within the limits

of the United States, either by hand or by the aid of any kind of typesetting machine, or from plates made within the limits of the United States from type set therein, or, if the text be produced by lithographic process, or photoengraving process, then by a process wholly performed within the limits of the United States, and the printing of the text and binding of the said book shall be performed within the limits of the United States; *which requirements shall extend* also to the illustrations within a book consisting of printed texts and illustrations produced by lithograpnic process, or photoengraving process, and also to separate *lithographs or photoengravings*, except where in either case the subjects represented a.i e located in a foreign country and illustrate a scientific work or reproduce a work of art:  .  .  ." [emphasis added].

It is the defendant's contention that the silk screen process used by the plaintiff in reproducing the original designs constitute either "photo engraving" or "lithography" within the meaning of Section 16 of the Copyright Act of 1909. It is further claimed that "all methods of manufacturing printing plates were intended to be covered by Congress [by the 'Manufacturing clause'] as there are no printing processes excluded from 17 U.S.C. § 16."

 It cannot be denied that the silk screen process clearly dates from well before the Copyright Act of 1909. (The ancient Chinese used it with beautiful results). I cannot believe that the Congress of the United States was ignorant of it when the Act was passed. Indeed, at the time the Act was passed photogravures, rotogravures, etchings, woodcuts, etc., were known to the trade. The Compendium of the Copyright Office, Chapter 6, indicates that they are not within the "Manufacturing clause" as far as the Copyright Office is concerned. While it is clear that the Compendium is not binding upon this Court, it is indicative of the many types of reproduction which are not included within the Manufacturing clause.

I find that the silk screen process, even when the positive is developed by a photographic process, is not within the meaning of the terms "photoengraving" or "lithography", as used in Section 16 of the Copyright Act of 1909.

I am further convinced that the Manufacturing clause does not include all printing processes, as suggested by the defendant, for it would have been easy for the Congress if they had intended to include all printing processes, to say just that. The Congress did not do so and I will not add that gloss.

Accordingly, a preliminary injunction will issue to prohibit the importation by the defendants of the various fabric designs copyrighted by the plaintiff.

IT IS SO ORDERED.